### CARR et al. v. FULMER.

(Circuit Court of Appeals, Fifth Circuit.    March 30, 1920.)

No. 3443.

Specific performance ☞61—Purchaser not entitled under contract to require vendor to perfect title.

A contract for sale of land, on signing which purchasers paid $1,000, providing that, "if title is not good and cannot be made good within six months after written notice that title is defective, then this $1,000 is to be paid back," *held* not to obligate the seller to remedy a defect in the record title which could not be remedied within the six months, nor to entitle purchasers to enforce specific performance after refusing to accept the deed tendered because of such defect.

Appeal from the District Court of the United States for the Northern District of Mississippi; Edwin R. Holmes, Judge.

Suit in equity by Oscar Carr and W. A. Ritchie against J. D. Fulmer. Decree for defendant, and complainants appeal.    Affirmed.

Oscar G. Johnston and John W. Cutrer, both of Clarksdale, Miss., for appellants.

St. John Waddell, of Memphis, Tenn., for appellee.

Before WALKER, Circuit Judge, and CALL and HUTCHESON, District Judges.

WALKER, Circuit Judge.    By a written agreement dated March 16, 1916, between the appellants, Oscar Carr and W. A. Ritchie, and the appellee, J. D. Fulmer, the latter, in consideration of the payment to him by the former of the sum of $1,000 "as earnest money and in part payment for the purchase" of described 1,040 acres of land in Tunica county, Miss., sold and agreed to convey that land to the former for the sum of $28,000, $4,000 of which was payable in cash, and the balance in five described installments, to be secured by deed of trust on the land, "balance of cash payment to be paid J. D. Fulmer upon presentation of a good and valid warranty deed after allowing 30 days from delivery of abstracts of title for examination of title only." The contract contained the following provisions:

"It is understood and agreed that, if title is not good and cannot be made good within six months after written notice that title is defective, then this one thousand ($1,000.00) dollars is to be paid back to Oscar Carr and W. A. Ritchie or order; but if the title is good, and the property not taken, this one thousand dollars ($1,000.00) is to be forfeited, one-half to the seller and the other half to the Churchill Company. It is expressly understood and agreed, however, by both parties to this contract, that such forfeiture shall in no way affect the rights of either party to enforce the specific performance of this contract; and the seller hereby agrees to pay the regular commission on this sale whether the title is good or bad.

"This place is sold to said Oscar Carr and W. A. Ritchie subject to lease to tenant for the current year.    Buyers are to receive the rents for this year and hereby assume all taxes for said year.

"The seller, the said J. D. Fulmer, hereby agrees to pay to Churchill &

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Company the sum of five hundred dollars ($500.00) in cash in full settlement of their commission for negotiating this sale.

"Seller agrees to furnish to buyer abstracts of title brought down to date."

The parties will be referred to by their designations in the trial court, where Carr and Ritchie were plaintiffs, and J. D. Fulmer was defendant. Abstracts of title were furnished as required by the contract. As to 440 acres of the land they did not show that the defendant had a good record title. The principal deficiencies in the record title to the 440 acres were that interests in that land, which the records showed to have been in J. J. Thornton, J. W. Fulmer, and Delos Craddock, were not by the records shown to have been acquired by the defendant. Within 30 days from delivery of the abstracts of title to the plaintiffs, they called the deficiencies to the attention of the defendant, and demanded that they be remedied by obtaining quitclaim deeds from the three individuals mentioned or their heirs. Thereupon the plaintiffs were informed of the existence of facts, capable of proof, showing that, by dealings to which the three individuals mentioned were parties, their interests in the land had been acquired by the defendant, and also that the latter had been in continuous and uninterrupted adverse possession of all the land for a period considerably longer than was required to confer a good title. It was disclosed that both J. J. Thornton and J. W. Fulmer were dead, and that the latter left a will which devised all his property to a number of persons, all nonresidents of the state of Mississippi, and several of whom were minors at the time the contract was made and when this suit was brought.

More than 30 days after the delivery of the abstracts of title, and long before the expiration of the 6 months mentioned in the contract, the defendant tendered his warranty deed to all the land, for delivery to the plaintiffs upon their doing what the contract required of them. Because of the defects in the record title the plaintiffs declined to accept the tendered deed, and on November 7, 1916, filed their bill in this case. That bill prayed for a decree directing the defendant to comply with the terms and conditions of his above-mentioned contract by perfecting his record title to the lands described in that contract, and by delivering to plaintiffs a deed to the lands upon the latter complying with their obligations under the contract, and that defendant pay to the plaintiffs the alleged amount of the rent of the land for the year 1916, with interest thereon, or that, if the defendant shall fail, neglect, or refuse to correct the defects in his title and to convey the lands in accordance with the contract, plaintiffs be given a decree for a sum alleged to be the amount of the profit they could have realized on a resale of the land, and for such other or further relief, either general or special, as the facts may warrant.

By the decree rendered the claims of the plaintiffs to specific performance and for damages for breach of the contract were disallowed, and it was adjudged that the defendant pay to the plaintiffs the amount paid by the latter when the contract was entered into,

with interest thereon. The plaintiffs appealed from that decree, and assign as errors the court's failure to decree specific performance in their favor, and its failure to award them damages for breach of the contract by the defendant.

In no way was the defendant obligated to remedy a defect in his record title which was not capable of being remedied within six months after written notice of the defect. The contract provided for the defendant repaying to the plaintiffs the $1,000 paid by the latter, "if title is not good and cannot be made good within six months after written notice that title is defective." The terms of the contract negative the conclusion that it was intended to have the effect of enabling the plaintiffs, without doing, or being ready and willing to do, within the time prescribed for consummating the sale, what was required of them, to hold the defendant, after the expiration of such time, under an obligation of remedying defects in his title which could not be remedied within that time. The evidence was such as to support findings that the defects in the record title to part of the land were such that they could have been remedied only by a decree in a suit to remove the clouds on the title and to have the real owner's title confirmed and quieted, and that a decree in such a suit against nonresidents, some of whom were minors, could not be obtained within 6 months after notice of the defect in the title. The record not showing otherwise, it may be presumed that the decree appealed from was based upon such findings.

Under the law of Mississippi, all decrees against nonresident, absent, or unknown defendants, rendered upon proof of publication only, are subject to be reheard on application of such a defendant within 2 years after the rendition of the decree. To sustain the claim of the plaintiffs that performance on their part could be postponed until defects in the record title could be remedied effectually and conclusively would have the effect of preventing the defendant, possibly for several years, from selling his land to another, though the plaintiffs did not, within the time allowed them by the contract, do or offer to do what was required of them to consummate the sale. Under the contract the plaintiffs were not required to take or pay for the land, if the record title to it was not good and could not be made good within 6 months after written notice that title was defective. On the other hand, the contract did not require the defendant to await the consummation of the sale, until defects in his title were remedied which could not be remedied within 6 months after written notice. By their refusal, because of such defect, to accept the deed tendered by the defendant, the plaintiffs lost the right to have the contract specifically enforced, if the defect was such that it could not be remedied within the stipulated time, and all that they were entitled to in that situation was the repayment of the $1,000 they had paid. They could not refuse to accept a tendered deed, and at the same time retain the right to coerce performance by the defendant.

The plaintiffs were not entitled to relief, the granting of which would give the contract the effect of conferring on them an option

for a wholly indefinite time of buying the land on the terms stated, with the result that during a period of possibly several years' duration the defendant could neither require performance by the plaintiffs nor sell his land to another. The contract shows that such a tying up of the land in favor of the plaintiffs, and to the detriment of the defendant, was not contemplated. The plaintiffs having refused to accept the deed tendered, the defendant was not liable in damages for breaching a contract which he offered to comply with so far as compliance was possible, he not having obligated himself to furnish a good record title, if he did not have it and could not get it within the time stated.

It was suggested in argument that the plaintiffs were entitled to specific performance as to the part of the land the record title to which was good. It was not alleged or proved that prior to the bringing of the suit the plaintiffs offered to take and pay for any of the land, nor whether the land, the title to which was good, was worth the same, or more or less per acre than the part of it the record title to which was defective. Even if, in any event, the plaintiffs would have been entitled to relief, the granting of which would have the effect of requiring the defendant to do what he never agreed to do, the plaintiffs were not entitled to partial specific performance without making any offer to perform on their part.

The conclusion is that the decree appealed from is not subject to be reversed on any ground urged against it. That decree is affirmed.